UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| DAVID LAWRENCE HOLT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 6:11-CV-236-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| KAREN F. HOGSTEN, WARDEN, et al., | ) | **ORDER** |
| | ) | |
| Defendants. | | |

\*\*   \*\*   \*\*   \*\*   \*\*

David Lawrence Holt ("Holt") is currently incarcerated in the Federal Correctional Institution at Manchester, KY ("FCI-Manchester"). Holt, proceeding *pro se*, filed this action, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), against the following prison personnel at FCI-Manchester: (1) Karen F. Hogsten, Warden, (2) Robert D. Ranum, Associate Warden, (3) Angela M. Owens, Associate Warden, (4) Tim Powers, Safety Department Supervisor, (5) Pam Clark, Facility Department Supervisor, (6) Shirley Smith, Laurel-B Unit Manager, (7) Greg Hall, former Laurel-B Unit Manager, (8) Angel Wilson, Health Services Administrator, (9) Marguarite Carroll, Health Services Administrator, and (10) Michelle Hensley, Registered Nurse. Holt claims that these defendants were deliberately indifferent to his medical condition, in violation of his Eighth Amendment rights, relative to the injuries he sustained on November 1, 2010, when a television set fell from its stand onto him. Holt seeks compensatory damages of $450,000.00 against

1

each defendant, punitive damages of $1,000,000.00 against each defendant, his costs, and a jury trial on all issues triable by jury.

This matter is before the Court on Defendants' motion to dismiss, pursuant to Fed. R. Civ. P. 12(b), or in the alternative, for summary judgment. [R. 63] This motion is ripe for review. Because the record establishes that Holt's complaint should be dismissed for his failure to exhaust his administrative remedies relative to his *Bivens* claims, Defendants' motion to dismiss, or in the alternative, for summary judgment will be granted.

I

On November 1, 2010, at approximately 6:10 a.m., Holt was watching television in a common area of the housing unit. He climbed and stood on a handrail to reposition/adjust a television setting on a platform/shelf on a wall approximately ten feet above the floor. While Holt was repositioning the television, it tipped forward toward Holt, resulting in (1) his losing his balance on the handrail, (2) the televison set falling on him, and (3) Holt and the television both falling to the floor, with the television set striking and injuring him. The details surrounding this incident are set out in the following paragraphs of his complaint:

> 25.) On 11-1-10, at approx 6:10 a.m., Plaintiff entered the lower common-area in L/B Unit to watch the "News TV", and as is the case most every morning, this particular TV was pivoted away from the support column, resting on several paperback books and on a non-news station (see par. 11 & 24 above).
>
> 26.) With no remote control or other available alternative, and believing it was acceptable, even permitted, Plaintiff, exercising reasonable care under the circumstances, climbed said handrailing and inmate phone station in order to reposition the "News TV" back to the proper viewing direction and news channel. That as Plaintiff was repositioning the unsecured "News TV" it freely slid forward, tipped off the 10+ foot high steel platform and came down directly on top of plaintiff, causing him to fall.

2

> 27.) The unexpected danger compelled Plaintiff to instinctively attempt to protect himself while at the same time save the large "News TV," but it was too heavy and awkward, forcing Plaintiff to lose his handhold and ultimately plummet headfirst [to] the 10+ foot concrete floor. . . .

[D.E. 1, p. 9].

Following this incident, FCI-Manchester personnel transported him to Manchester Memorial Hospital where he was examined and treated for some of his injuries and then transported by ambulance to the University of Kentucky ("UK") Hospital in Lexington, Kentucky, for additional examination and treatment. He was released from the UK Hospital later that same day and was returned to FCI-Manchester at approximately 6:00 p.m.

Holt claims that subsequent to the injuries he received from this falling incident, FCI-Manchester personnel were negligent in the manner in which they attended to him immediately following this fall and that thereafter, the prison staff in the Health Services Department was negligent and/or deliberately indifferent to his serious medical needs, in violation of his Eighth Amendment rights, by the manner in which staff treated or failed to treat his numerous injuries.

Holt states that he was escorted unassisted to the prison's Health Services Department ("HSD"), for processing of the paperwork and hospital prescriptions he had received from outside the prison that day. Holt further states that he complained to HSD personnel of severe pain all over his body and head and requested a wheelchair or cane, as well as the recommended dose of medication from the hospital, but that HSD personnel "flat-out denied" all of his requests, informing him that he would have to return to the HSD the next

day for sick-call and that in the interim, he could take ibuprofen for pain if he already had any in his possession that he had previously purchased from the commissary.

II

Holt has filed three Administrative Remedies (No. 651064-F1, R-1, and A-1) relative to this incident. All three of these remedy requests concern his claim that the defendants were negligent in the placement of the "News TV" and the alleged risk it presented to him. [R. 65-1, Declaration of Carlos J. Martinez, ¶ 5; Attachment B, Administrative Remedy Generalized Retrieval] These three Administrative Remedies and the BOP's responses thereto are summarized below:

A.   **Administrative Remedy 651064-F1**

On August 1, 2011, Holt filed Request for Administrative Remedy No. 651064-F1 (hereinafter "BP-9") with the Warden at FCI-Manchester, claiming that (1) the News TV in L/B Unit was unsecured, setting on paperback books, (2) the prison had been negligent in failing to secure the News TV and in failing to provide a remote control for the News TV in L/B Unit, (3) the unsecured News TV, being located on a wall platform 10 feet off the floor presented a very dangerous condition, (4) he was at substantial risk of harm by the prison's failure to secure the TV and to provide a remote control, and that the risk of serious harm "was also increased exponentially by allowing any/all inmates to climb up to access the manual function controls &/or reposition the News TV in L/B unit." [R. 65-1, p. 29] Holt elaborated: "This negligence is the direct cause of the serious and permanent injuries that I suffered. They failed to provide a safe and humane conditions of confinement, which are exacerbated by your complete and unfathomable failure to secure the News TV since the injuries of 11-1-10." *Id.* Holt requested $30,000,000.00 in monetary damages. [R. 65-1, pp. 28-30]

4

On August 8, 2011, the FCI-Manchester Administrator Remedy Coordinator rejected Holt's BP-9 because it was untimely, having not been filed within 20 days of the complained-of event, *viz.,* the November 1, 2010 incident. The rejection notice also advised Hold that monetary damages are addressed through tort claims. [R. 65-1, <u>Declaration of Carlos J. Martinez</u>, ¶ 5; Attachment C, Request for Administrative Remedy No. 651064-F1]

**B.      Administrative Remedy 651064-R1**

Holt appealed the rejection of this Administrative Remedy Request to the BOP's Regional Office (hereinafter "BP-10"). In this appeal, Holt reiterated the same allegations of negligence he had made in his BP-9.

On August 29, 2011, the BOP's Regional Office rejected Holt's appeal was rejected for being untimely and for failing to provide specific information about the request or appeal so that it could be considered. Holt was advised that he could resubmit the appeal within five days of the date of the rejection notice. [R. 65-1, <u>Declaration of Carlos J. Martinez</u>, ¶ 5; Attachment D, Request for Administrative Remedy No. 651064-R1]

**C.      Administrative Remedy 651064-A1**

On September 26, 2011, Holt appealed the rejection of his BP-10 to the BOP's Central Office (hereinafter "BP-11"). In this appeal, Holt claimed that FCI-Manchester staff was aware of the negligence that resulted in the November 1, 2010 accident, *i.e.*, the precarious placement of the News TV that fell on him and the lack of a remote control. For the first time in his administrative remedy requests, Holt raised allegations concerning his medical treatment after the November 1, 2010 accident, claiming that he was not properly transported to the hospital after his injury and that he was not provided with a first-floor handicap cell until he would be

able to walk unassisted up the staircases. Holt then presented a laundry list of injuries and conditions he claimed had been caused by FCI-Manchester personnel.

In this appeal, Holt also complained about the Administrative Disciplinary process and alleged that he was denied assistance in filing administrative remedies for the November 1, 2010 incident and was directed to wait to file his BP-9 until after the Incident Report appeal had been resolved. Holt further complained that nothing had changed at FCI-Manchester following his November 1, 2010 accident and that he is still at risk of serious injury and under "unsafe conditions of confinement" from the "NEWS TV" set. Holt requested the following relief: (1) $30 million in monetary damages; (2) the reversal of the Warden's rejection of the BP-9 and a statement from the Central Office declaring that the initiation of these issues in the BP-11 is not untimely; and (3) a ruling that (a) the BOP's Regional Office has forfeited its authority to render a decision in this matter now that 30 days have passed, and that the Central Office has the sole authority to make a decision in this matter, and (b) that these issues have been exhausted within the BOP's Administrative Remedy process. [R. 65-1, p. 37].

On October 12, 2011, the Central Office Administrative Remedy Coordinator rejected Holt's appeal because it was untimely, noting that the his BP-9 had not been filed within 20 days of the complained-of incident. The rejection notice gave Holt the opportunity to resubmit his request in proper form within five days of the date of the rejection notice. [R. 65-1, p. 38]

III

As described above, Holt filed an administrative remedy concerning his allegations that the defendants had been deliberately indifferent to his medical needs, in violation of his Eighth Amendment rights; however, he failed to properly and fully exhaust his administrative remedies regarding these claims. Consequently, his Complaint must be dismissed.

Under the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended 42 U.S.C. § 1997e to make exhaustion of administrative remedies mandatory for prisoners. The statute provides that:

> No action shall be brought with respect to prison conditions under 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Therefore, a prisoner-plaintiff must first exhaust "such administrative remedies as are available" prior to bringing a prison conditions action in a District Court. 42 U.S.C. § 1997e(a). Based on this provision, regardless of the relief offered through the administrative procedures, prisoners are required to exhaust all administrative remedies prior to filing a lawsuit regarding prison life. *Booth v. Churner*, 532 U.S. 731, 741 (2001). This requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 525 (2002).

Moreover, the Supreme Court has held that the PLRA requires proper exhaustion of the administrative remedy process, as "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules…" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court stressed that the benefits of exhaustion "can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance

system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id.* at 95.

The BOP's four-tiered administrative remedy scheme, available to inmates who have a complaint about their confinement, is set out in Administrative Remedy Program Statement 1330.17 and 28 C.F.R. § 542.10-542.19. In summary, an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a formal request or a Request for Administrative Remedy. 28 C.F.R. § 541.13(a). By attempting to informally resolve the issue, the inmate provides staff with an opportunity to correct the problem. If the inmate cannot informally resolve his issue, then he may initiate the formal remedy process by filing a formal written request, on the appropriate Request for Administrative Remedy form ("BP-9") to the Warden. 28 C.F.R. § 542.14. If the inmate is not satisfied with the Warden's response, he may appeal to the Regional Director for the geographical region in which the inmate's place of confinement is located. The appeal must be submitted on the appropriate Regional Administrative Remedy Appeal form ("BP-10"). 28 C.F.R. § 542.15. If the inmate is not satisfied with the Regional Director's response, he may appeal to the Office of General Counsel ("OGC") of the BOP, on the appropriate Central Office Administrative Remedy form ("BP-11"). Appeal to the General Counsel is the final administrative appeal in the BOP's Administrative Remedy Program. 28 C.F.R. § 542.15.

If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, a response shall be made by the Warden within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days. If the time for response to a Request or Appeal is insufficient to make an appropriate decision, the time for responding may be extended once by 20 days at the

institution level, 30 days at the regional level, and 20 days at the Central Office level. The inmate must be informed of an extension in writing. 28 C.F.R. § 542.18.

One exception to the requirement that the initial filing be made at the institutional level is when the issue involved is sensitive in nature. Program Statement 1330.16(8)(d) and 28 C.F.R. § 542.14(d)(1) provide in pertinent part:

> (1) Sensitive Issues. If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate will be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

An examination of Plaintiff's complete administrative remedy history shows that he did not properly administratively exhaust remedy number 651064, the only remedy relevant to his negligence claims that are the subject of the present Complaint. [R. 65-1, <u>Declaration of Carlos J. Martinez</u>, ¶ 5, p. 3; Attachment B, Administrative Remedy Generalized Retrieval Data]. Holt submitted Administrative Remedy No. 651064 on August 1, 2011, and on August 8, 2011, the BOP rejected it because it was untimely, as it had been filed more than 20 days after the incident that occurred on November 1, 2010.[1]

Holt appealed the Warden's rejection of Administrative Remedy No. 651064-F1 to the BOP's Regional Office, but it was rejected, among other reasons, because it was untimely. The Regional Office gave Holt an opportunity to resubmit his appeal within five days of the date of

---

[1] Being filed nine months after the incident, Holt submitted this administrative remedy request well beyond the 20-day limitations period prescribed by the BOP's administrative remedy scheme.

9

the rejection notice. [R. 65-1, Declaration of Carlos J. Martinez, ¶ 5, p. 3; Attachment B, Administrative Remedy Generalized Retrieval Data]. In lieu of resubmitting his appeal to the Regional Office, Holt then appealed to the BOP's Central Office. In that appeal, Holt raised for the first time in his administrative remedies the allegations regarding his medical treatment after the November 1, 2010 accident. [R. 65-1, Declaration of Carlos J. Martinez, ¶ 5, p. 4] On October 12, 2011, the Central Office rejected Holt's appeal because it was untimely; however, Holt was given an opportunity to resubmit his request in proper form within five days of the date of the rejection notice. [R. 65-1, p. 38]

Since the initial filing of Administrative Remedy No. 651064 at the institutional level as a BP-9 request was outside the limitations period, it was not possible for Holt to correct the reason for its rejection and resubmit a corrected administrative remedy request at any level, BP-9, BP-10, or BP-11. Holt's filing was doomed from the very beginning because it was untimely, a defect that could not be corrected.

Thus, Plaintiff has failed to comply with the requirements of the PLRA and as confirmed in *Woodford v. Ngo*, *supra*. Merely attempting to exhaust, beginning the process of exhaustion, or filing deficient remedies will not suffice. A prisoner cannot fail to file an administrative remedy request or grievance, or file but then abandon his efforts to complete the administrative process altogether. *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999). Plaintiff's failure to properly exhaust his underlying *Bivens* grievances through all of the available administrative remedies by filing a *timely* administrative remedy request (1) denied the agency the opportunity to address the issue at hand at all administrative levels, (2) denied the Court with a proper administrative record, and (3) failed to set forth a proper finding of facts. *See Macias v. Zenk*, 495 F.3d at 44 (Notice of a claim alone is not sufficient after *Woodford v. Ngo*, which permits

suit only after "proper exhaustion" of the administrative system).

For these reasons, the Court will grant Defendants' motion to dismiss, pursuant to Fed. R. Civ. P. 12(b), for Plaintiff's failure to exhaust his administrative remedies. "Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement." *Graves v. Davis*, 2:10-CV-210-MHT, 2012 WL 3639044, at *3 (M.D. Ala. July 26, 2012) *citing Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998); *Woodford v. Ngo*, 548 U.S. at 93.[2]

Fed. R. Civ. P. 12(b) provides for the dismissal of claims and parties for seven listed reasons. Thereafter, Rule 12 continues, in subsection (d), as follows:

> **(d) Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties shall be given reasonable opportunity to present all material made pertinent to the motion.

*Id.* Thus, the plain language of Rule 12(d) permits a 12(b) motion to be converted to a motion for summary judgment. As the moving defendants herein have submitted the Declaration of Carlos J. Martinez, with numerous exhibits appended thereto (which the Court has considered in evaluating the defendants' motion [R. 63)]), summary judgment standards are applicable. These matters outside the pleadings, the Declaration of Carlos J. Martinez and the exhibits attached thereto, verify that Holt failed to timely initiate and properly exhaust the administrative remedies available to him.

---

[2]Defendants also contend that Plaintiff's Complaint must be dismissed for his failure to establish a constitutional claim under the Eighth Amendment, as he clearly received medical treatment for his injuries. Defendants further submit that, even if Plaintiff had established a constitutional claim, they are entitled to the defense of qualified immunity. Having concluded that Plaintiff's Complaint is subject to dismissal because he failed to properly exhaust his administrative remedies, the Court need not address these arguments.

IV

Accordingly, it is hereby **ORDERED** as follows:

(1)  Defendants' Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b), or alternatively Motion for Summary Judgment [R. 63] is **GRANTED**;

(2)  Plaintiff David Lawrence Holt's Complaint [R. 1] and Amended Complaint [R. 21] are **DISMISSED**.

(3)  The Court will enter an appropriate judgment.

(4)  This matter is **STRICKEN** from the active docket.

This 13th Day of March, 2014.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge